WILLIAM KERR, PROSECUTOR, v. CITY OF ATLANTIC CITY, DEFENDANT.

Argued May 15, 1931—Decided December 22, 1931.

Before Justices TRENCHARD, DALY and DONGES.

For the prosecutor, *Cole & Cole.*

For the defendant, *Anthony J. Siracusa.*

The opinion of the court was delivered by

TRENCHARD, J. William Kerr, the prosecutor of this writ, was a member of the police department of Atlantic City and was dismissed by the director of public safety after conviction upon· charges preferred and served and a hearing before the director.

The charges were: "That on December 4th, 1930, at about three-ten A. M., you, William Kerr, a patrolman of the Atlantic City police department, while off duty, appeared at the Lighthouse Garage, No. 17 North Vermont avenue, Atlantic City, New Jersey, along with one Raymond Day, a former member of the police department of Atlantic City, heretofore dismissed therefrom, and accosted Eugene Hopkins, an employe of said garage. That you threatened said Eugene Hopkins, stated that you were a 'stick-up man;' and further said to the said Eugene Hopkins: 'How much money have you got?' That you thereafter demanded gasoline for your automobile, without pay, and that your companion, in your presence, demanded five gallons of gasoline for your car; and that you finally drove your car from the garage after having received two gallons of gasoline, for which no payment was made. All of which is contrary to rule 14 (violation of any criminal law) to wit, attempting to rob the said Eugene Hopkins and forcing him to deliver merchandise without payment therefor; rule 16 (conduct unbecoming an officer and a

gentleman), and rule 17 (conduct subversive of good order and the discipline of the force); as provided in the rules and regulations for the government of the bureau of police of the city of Atlantic City, New Jersey, as adopted by the city commissioners, January 6th, 1916."

The prosecutor first contends that his conviction and dismissal should be set aside because "the proof submitted did not warrant a conviction."

The argument under this head is that the evidence does not support a finding that the prosecutor did and said the things imputed to him in the charges.

But we think that the testimony of Eugene Hopkins—who made the initial complaint upon which the charges were based—amply justified the findings.

Hopkins testified: "Q. Did you have any conversation with Officer Kerr on December 4th, last? A. I did. Q. Tell us what happened there, what he said and what he did, if anything? A. Well, on December 4th, Thursday morning, about three o'clock, I was sitting in the office and a car drove up and blowed a horn, so I didn't get up right away, because I knowed all my customers was in and it is very seldom anybody comes for gas at that hour of the morning, but finally I got up and I opened the door. When I opened the door he came in. He looked at me and I looked at him, so he said, 'I'm a stick-up man.' Q. Who came in? A. Mr. Kerr. Q. This gentleman here? A. Yes, sir, right there. Q. Go ahead. A. He says, 'I'm a stick-up man.' He says, 'have you got any money?' I says, 'well, I've got a little.' I put my hand in my pocket and pulled out my gun. When I did that he said, 'I'm all right.' He said, 'I'm an Atlantic City officer,' and he showed me his badge. At that time Day came in. Q. Who is Day? A. I don't know who he is, but he was there and he came in, so after he came in I felt more satisfied, so I put my gun back in my pocket because I know him. I don't know him personally but I know him when I see him on the street, so he came in and said, 'we ain't got no money; give us some God damn gas.' Q. Was Kerr there at the time? A. He was, yes. He said, 'get some God damn

gas.' He said, 'get me five gallons.' I said, 'listen, I'm checked up on this gas and I would have to pay it out of my own pocket.' He said, 'well, put some gas in there,' so I put in two gallons and off he went. *Q.* Did he pay you for the gas? *A.* No, sir, he did not. *Q.* Offer to make you any payment? *A.* No, he did not. *Q.* Promise to make any payment? *A.* No, he didn't. He said, 'put in gas,' and after I put in two gallons of gas he went on."

That and other testimony, corroborated and amplified as it is by the testimony of the captain of the police department and other witnesses, in our judgment furnishes a rational basis for the conviction and dismissal of the prosecutor, even after a consideration of the testimony of the prosecutor and his witnesses intended to be in explanation or denial thereof.

In reviewing the action of a director of public safety this court will not weigh the evidence taken before him, for the purpose of reaching an independent conclusion on the question of the guilt or innocence of the prosecutor. It will only consider such evidence for the purpose of determining whether or not it affords a rational basis for the judgment against him. If it does, then no matter whether the evidence be weak or strong, this court will not interfere. *Herbert* v. *Atlantic City,* 87 *N. J. L.* 98; *Reilly* v. *Jersey City,* 64 *Id.* 508.

It is next said that there was no finding of fact by the director of public safety.

The argument in support of this point is this and only this: "There should have been a statement as to what the witnesses said in substance and what the director found as a fact."

That argument is based upon an unwarranted premise.

The contention that the director made no sufficient finding of fact is plainly ill founded in point of fact. The return shows that he found the prosecutor guilty of the offenses charged against him, specifying them. The contention that there was no sufficient statement of the evidence is likewise a mistaken one. The prosecutor has overlooked chapter 208 of *Pamph. L.* 1914, *p.* 419. That act provides for a return,

as here, of the stenographer's transcript of the evidence, where, as in the present case, it has been stenographically reported and certified as authorized by the act, and expressly enacts that such transcript shall constitute a part of the state of the case and be considered by the reviewing court upon the argument of the writ of *certiorari* as the evidence given at the trial. *Hewson* v. *Newark,* 95 *N. J. L.* 28.

The conviction and judgment brought up for review will be affirmed, with costs.